IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TOMAS TRUCKING LLC, | ) | |
| | ) | CASE NO. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MAYBACH INTERNATIONAL | ) | |
| GROUP, LLC | ) | JURY TRIAL DEMANDED |
| | ) | |
| Maybach. | ) | |

## COMPLAINT

Plaintiff Tomas Trucking LLC ("Tomas Trucking") complains against Maybach International Group, LLC ("Maybach") alleging claims under the Truth in Leasing Act ("TILA"), 49 U.S.C. § 14702(a)(2) and the Illinois common law of contract.

### Introduction

1. The Truth in Leasing Act ("TILA"), 49 U.S.C. § 14702(a)(2) and its implementing regulations govern the terms and conditions under which owner-operator truckers lease equipment to federally-authorized motor carriers that transport freight in interstate commerce. *See* 49 C.F.R. § 376.12. TILA regulations require the motor carrier's equipment lease to disclose, in writing, the amount that the motor carrier will pay the owner-operator as compensation. 49 C.F.R. § 376.12(d). The regulations also require the lease to disclose all expenses that the carrier will "charge back to the operator" and all escrow payments that the owner-operator will make to the motor carrier. *Id.* § 376.12(h) & (k). Finally, the regulations require the motor carrier to adhere to the terms of the lease. *Id.* (introductory paragraph).

2. Plaintiff alleges that Maybach violated the TILA by paying him significantly less than his equipment lease required for each load that he transported. In particular, Maybach

promised to pay him a certain percentage of the price of each load, but it lied to him about that price, and adjustments made to the price, so it could pay Plaintiff less than the lease required. Maybach also violated TILA by not providing Plaintiff copies of rated freight bills for each load he hauled, not returning Plaintiff's escrow deposit, and not paying interest on the escrow amounts.

## Parties

3. Tomas Trucking LLC is a Florida corporation that is owned by Pascal Tomas, a Florida resident and truck driver with a CDL Class A license. From June 2019 until October 2023, Tomas Trucking hauled loads under Maybach's motor carrier license. Tomas Trucking entered into approximately three successive owner operator Lease Agreements with Maybach. During all times, Tomas Trucking worked for Maybach International, Tomas Trucking was not an agent for purposes of the TILA.

4. Defendant Maybach International LLC is an Illinois corporation headquartered in Elgin, Illinois. Maybach is a transportation carrier licensed with the U.S. Department of Transportation. It contracts with drivers to transport its customers' freight in interstate commerce.

## Facts

5. From approximately June 2019 until October 2023, Plaintiff Tomas Trucking performed line haul work for Maybach across several states. Plaintiff worked for Maybach as an owner-operator for purposes of the TILA regulations. 49 C.F.R. § 376.2.

6. Plaintiff signed multiple contracts with Maybach called a "Lease Agreement." One of the Lease Agreements, which Plaintiff executed in 2022, is attached as Exhibit A.

7. The Lease Agreements between Plaintiff and Maybach served as the "equipment leases" required by regulations promulgated by the TILA, 49 C.F.R. § 376.12.

8. In the Lease Agreements, Maybach promised to pay Plaintiff 88% of the adjusted gross revenue for each load. However, Maybach paid him less than this promised amount.

9. The 2022 Lease Agreement provides that the "adjusted gross revenue" is "all revenue received by CARRIER from shippers, consignees, or other carriers for commodities hauled by CONTRACTOR under this Agreement" and provides a limited list of allowable deductions Maybach may make to "all revenue" it receives before paying Plaintiff the promised 88%.

10. Maybach deducted a host of weekly charges and fees from Plaintiff's pay. See Exhibit B (Plaintiff's Weekly Pay Statement), including weekly deductions for a so-called escrow account that totaled approximately $4,500.

11. Maybach never paid interest on Plaintiff's escrow account.

12. When Plaintiff quit driving for Maybach, Maybach refused to return Plaintiff's escrow account, despite multiple requests from Plaintiff, and paid Plaintiff significantly less than it owed for Plaintiff's final settlement statement.

13. The Lease Agreement lists broad categories of potential charge back items that include potential monetary ranges such as "$0.00 - $5,000.00", "$0.00 - $10,000" and "$0.00 - $20,000." Ex. A, Appendix C.

14. Maybach made other deductions to Plaintiff's pay that were not listed as "chargeback" items in the Lease Agreement, including $1,000 for Plaintiff allegedly "failing to use seatbelt." Ex. B.

15. Maybach also under-reported to Plaintiff the gross revenue it received for each load Plaintiff hauled and allowable adjustments made to that gross revenue.

3

Case: 1:24-cv-03384 Document #: 1 Filed: 04/26/24 Page 4 of 8 PageID #:4

16. Maybach refused to provide Plaintiff with copies of the rated freight bill or rate confirmations for the loads Plaintiff hauled under its carrier license. Instead, Maybach created its own "Load Information" sheets that it shared with Plaintiff. *See* Exhibit C.

17. The Load Information Sheets did not list the actual gross revenue, or any adjustments to the gross revenue, for each load. Instead, the Load Information Sheets listed a price that was lower than the actual gross revenue Maybach received for each load.

18. Nothing on the Load Information Sheet indicated that the listed price was lower than the gross revenue Maybach received for the load.

19. Maybach's former Head of Recruitment and Operations informed Plaintiff in a telephone call that Maybach regularly under-reported the price of the load on its Load Information Sheets.

20. On one occasion, Plaintiff received a call from a broker, or brokers' representative, for a load he was hauling. Plaintiff complained to the caller because he was waiting a long time to pick up a load, and asked the caller to pay Maybach more for the load so that Plaintiff would receive more money as his promised percentage.

21. The caller responded that the broker was already paying a lot of money and reported the exact price of the load. However, the load price he quoted was approximately $300 more than the price Maybach's dispatcher had reported to Plaintiff.

22. Plaintiff confronted his regular dispatcher, Jason Mihajlovic, about the general practice of under-reporting the price of the load. Mihajlovic confirmed that Maybach engaged in this practice.

23. Maybach directly pocketed the portion of the adjusted gross revenue they concealed from Plaintiff.

4

24. For example, if the total gross receipt paid by a broker for a load was $1,500, Maybach might pocket $200 directly and pay Plaintiff 88% of the remaining $1,300—$1,144, or 76% of the actual total gross receipts of the load.

25. For these reasons, Maybach did not adhere to the terms of Plaintiff's equipment lease.

26. Maybach created "Load Information Sheets" with false load prices to induce Plaintiff to haul loads at a rate of pay that was less than the Lease Agreement required.

27. If Plaintiff had known the extent to which Maybach was under-reporting the load prices, he would not have agreed to haul loads at the rates his dispatcher offered to him.

28. Maybach required Plaintiff to use its fuel card to purchase gas for his truck.

29. Every week, Maybach reduced Plaintiff's settlement payments by the fuel charges on his fuel card.

30. Maybach negotiated rate discounts with multiple fuel stations, including Pilot and Flying J. Maybach then required Plaintiff to use the Pilot and Flying J fuel stations to purchase fuel.

31. Despite having negotiated substantial discounts on the price of the fuel, Maybach improperly charged Plaintiff the non-discounted full pump price for fuel on his weekly settlement statements and retained the savings, thereby depriving Plaintiff of the discounted fuel price. Maybach never actually paid the full pump price for fuel but nevertheless charged Plaintiff the full pump price for fuel.

## **Count I – Truth in Leasing Act**

32. Plaintiff incorporates all prior allegations as if fully stated herein.

33. Maybach is a motor carrier licensed with the U.S. Department of Transportation. Plaintiff worked for Maybach as an owner-operator for purposes of TILA.

34. Pursuant to the TILA regulations, Maybach signed an equipment lease with Plaintiff.

35. Under the TILA regulations, an authorized carrier may perform authorized transportation in leased equipment only if the written lease granting the use of the equipment meets the requirements of 49 C.F.R. § 376.12.

36. Under the regulations, the required lease provisions must be "adhered to and performed by the authorized carrier." *Id.* § 376.12 (introductory paragraph). TILA also requires that carriers provide copies of the rated freight bill to owner-operators who are paid a percentage of the price of the load (*id.* § 376.12(g)) and disclose all "charge-back items" or deductions made to drivers' pay for expenses. *Id*. § 376.12(h). Finally, the regulations require the carrier to pay interest on the amounts that it holds in escrow. *Id.* § 376.12(k)(5).

37. Maybach never paid interest on the amounts that it deducted in escrow from Plaintiff's pay. It also never returned Plaintiff's escrow money within 45 days of Plaintiff leaving the company.

38. In the equipment lease, Maybach agreed to pay Plaintiff a certain percentage of adjusted gross revenue for each load Plaintiff hauled for Maybach.

39. Maybach frequently underreported loads' gross revenue and paid Plaintiff less than the rate promised in Plaintiff's Lease Agreement.

40. Maybach did not provide Plaintiff copies of the rated freight bill for loads Plaintiff hauled.

41. Maybach did not adhere to the terms of its lease with Plaintiff.

42. Maybach made deductions to Plaintiff's settlement statements that were not authorized charge back items in the Lease Agreement.

43. Maybach charged Plaintiff for fuel in amounts that exceeded the amounts allowed under the equipment lease.

44. Under 49 U.S.C. § 14702(a), Maybach is liable for the damages that Plaintiff suffered on account of Maybach's regulatory violations.

### Count II – Breach of Contract

45. Plaintiff incorporates all prior allegations as if fully stated herein.

46. Maybach contracted with Plaintiff in a written lease agreement.

47. Plaintiff substantially performed all of his obligations under his contract with Maybach.

48. Maybach breached the contract with Plaintiff by underreporting the adjusted gross revenue for each load and paying Plaintiff less than the rate promised in the parties' equipment lease.

49. Maybach also breached the contract by not returning his escrow, making unauthorized deductions from his pay, and by overcharging him for fuel expenses.

### PRAYER FOR RELIEF

Plaintiff prays for the following relief:

a. An award of all economic, monetary, actual, consequential compensatory, and punitive damages available under the law;

b. An award of restitution and disgorgement;

c. An award of all equitable relief requested herein;

d. An award of reasonable litigation expenses and attorneys' fees;

e. An award of pre-and post-judgment interest, to the extent allowable; and

    f.   Other further relief that the Court deems just and reasonable.

## **Jury Demand**

Plaintiff demands trial by jury on all issues as to which a jury trial is available.

                      Respectfully submitted,

                      /s/ Christopher J. Wilmes
                      One of the Attorneys for the Plaintiff

Christopher J. Wilmes
cwilmes@hsplegal.com
Emily R. Brown
ebrown@hsplegal.com
HUGHES, SOCOL, PIERS, RESNICK & DYM, LTD.
Three First National Plaza
70 West Madison Street, Suite 4000
Chicago, Illinois 60602
312-580-0100